

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| MAYNARD AND FLORINE BERNARD, | CIV 08-1019 |
| Plaintiffs, | |
| -vs- | ORDER |
| | AND OPINION |
| UNITED STATES DEPARTMENT OF THE INTERIOR, SECRETARY OF THE DEPARTMENT OF INTERIOR[1], BOARD OF INDIAN HEARINGS AND APPEALS, GREAT PLAINS REGIONAL DIRECTOR, BUREAU OF INDIAN AFFAIRS[2], and GRADY RENVILLE, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This action, at least in part, has been an appeal from final agency action taken by the Board of Indian Appeals ("Board" or "IBIA"), the Board being authorized to deal with such matters by the Secretary of the Interior. The Board affirmed on October 16, 2007, a decision made by the Great Plains Area Regional Director of the Bureau of Indian Affairs ("BIA) on February 3, 2005.

---

[1] The amended complaint, filed August 6, 2009, named as plaintiff the "acting" Secretary of the Department of Interior. Ken Salazar was confirmed as Secretary on January 20, 2009. There was, at the time the amended complaint was filed, no "acting" Secretary and there is none now.

[2] The amended complaint named as plaintiff the "acting" Great Plains Regional Director. Michael S. Black was named Regional Director effective July 20, 2008. There was, at the time the amended complaint was filed, and there is not now any "acting" Regional Director.

The Board found no authority under the contentions of the plaintiffs for the agency to declare a gift deed from plaintiffs to Grady W. Renville null and void. The gift deed from the present plaintiffs placed the described land in joint tenancy with right of survivorship, the owners being Maynard Bernard (one of the present plaintiffs) and defendant Renville. An application to make the transfer had been submitted to the agency by plaintiffs. The application stated: "I wish to Gift Convey my land to Maynard Bernard + Grady W. Renville Joint Tenancy with the right of survivorship." The stated reason on the application was a joint business venture. The word "yes" is circled next to the statement: "I wish to waive the appraised value." The gift deed application was never approved by the BIA although the BIA agency superintendent approved the deed itself on May 21, 2004, after the deed had been executed in the presence of a notary public. The deed was recorded on June 3, 2004, in the appropriate BIA office.

Plaintiffs took no action to disclaim or challenge the deed between the date of its execution on April 20, 2004, and the date of approval by the agency superintendent on May 21, 2004. Plaintiffs claim they did not realize that a gift had been conveyed to Mr. Renville until they received a copy of the deed from the BIA in mid-June of 2004. This is, at best, a strange contention since the form signed by Mr. Bernard stated that he wished to "Gift Convey my land . . ." By mid-June of 2004, Mr. Renville had commenced development of the land as lake lots, spending, according to him, more than $188,000.00 in connection therewith. Despite the finding of the Board to the contrary, plaintiffs have disputed that Mr. Renville spent this much money to start the development. They have not specified what was spent. The Board also noted in its decision that there was no evidence in the record of misconduct by Renville to "induce" the gift deed. 46 IBIA 37, FN 11.

On July 21, 2004, plaintiffs, through a lawyer (not the present attorney for the plaintiffs), wrote to the local BIA Superintendent, asking that the deed be declared "null and void." There was no mention of offering any fair treatment for Mr. Renville. There

was no mention of a rescission. The superintendent and later the BIA Regional Director refused to "void" the deed, finding that there was no authority for the agency to so act. Nothing was ever presented to the agency by plaintiffs to show what authority there was for the agency to act to void a deed. The next step was the appeal to the Board and now to this court.

The claim here is in essence that the BIA breached its fiduciary obligation to the plaintiffs. One of the significant problems for plaintiffs in the present action is that the IBIA never decided whether there was any possible breach of a fiduciary obligation. A failure by an agency to act almost always results in a remand to the agency to permit it to act before the matter proceeds in federal court. A remand in this case, however, would accomplish nothing but further delay as the agency would no doubt come to the same conclusion that the agency had no authority to void the deed in question. All parties are certainly close to being described as "elderly" and a death by one of the joint tenants would result in a legal "mess" since the surviving joint tenant would own all the land in question and further litigation would be required.

The claim could be deciphered as alleging the practice of law by a non-lawyer employed by the BIA. However, the employee did exactly what plaintiffs requested and there is no evidence of the employee holding herself out as a lawyer or even a real estate agent. It is elementary, of course, that, if a lawyer had been consulted, many questions would have been posed and warnings given. No competent lawyer would have permitted the parties to proceed as they did. As explained above, there was no such consultation until after the deed had already been executed and recorded. Even then, nothing but an inequitable remedy was sought. The original complaint sought money damages but, under the first amended complaint, there is no claim for monetary damages under either the Tucker Act (which claims would lie in the Court of Federal Claims and not in the District Court) or the Little Tucker Act. Nor is there a claim presented under the Federal

3

Tort Claims Act. The motion of the government (Doc. 7) to dismiss this action became moot and was earlier denied by the court.

An action was filed by Mr. Renville in tribal court on the Sisseton-Wahpeton Reservation. The present plaintiffs filed a counterclaim to set aside the gift conveyance. Apparently, the tribal court action was still pending at the time of the appeal to the Board. Plaintiffs now represent to the court that the action in tribal court has been dismissed without prejudice. Why the parties did not proceed in tribal court is not explained by the record and the answer to the question is unknown to me.

The Board found it significant that plaintiffs did not argue that the deed was voidable; nor did they seek rescission. The court agrees with these concerns. Rescission is not an uncommonly used remedy under South Dakota law. There are numerous South Dakota Supreme Court decisions explaining the remedy and proper procedures to be followed. In addition, there is a rather extensive statutory scheme under South Dakota law, detailing what must be done to seek and to justify rescission. Rescission is not available in the absence of the party (seeking to rescind) offering to restore the opposing party to an equitable position. A "tender back" of all consideration received is one of the conditions precedent to a successful rescission.

The party seeking to rescind must normally act promptly and not take advantage of the other contracting party. The record has been devoid of any offers by plaintiffs to compensate Mr. Renville for any of his development expenses. Plaintiffs initially and for a long period of time simply sought the return of all the land, thus attempting to take advantage of what was spent by Mr. Renville. No court of equity would ever permit such conduct seeking a windfall. It is not at all surprising that the Board refused to grant what plaintiffs sought. "Inasmuch as Appellants have not sought rescission of the gift deed as a remedy for their claims, but limit their request for relief to a declaration that the deed is 'null and void', we affirm the Regional Director's decision without reaching the merits of Appellants' breach of trust claims." 46 IBIA 36-37. The Board further noted that it was

4

". . . undisputed that Renville has altered his position in reliance upon the conveyance--by expending more than $188,000 in developing the property--and is not a party to the allegations of breach made against BIA . . ." The Board was not aware of any relief which it had the authority to order. 46 IBIA 37. The Board affirmed the BIA action " . . . without reviewing the merits of Appellants' breach of trust claims. In so concluding, we express no opinion on the merits of these claims." 46 IBIA 38. The Board did conclude that it was immaterial that the gift deed application itself was never "approved" by the BIA. It was sufficient if the transaction itself was approved, as it was. They also found that no appraisal was required under the circumstances. The present plaintiffs waived any right to require an appraisal.

      Mr. Bernard and Mr. Renville are apparently second cousins. They apparently saw an opportunity to develop and sell to "outsiders" very valuable land at Pickerel Lake in Day County, South Dakota. We know, of course, that the parties should have each consulted a lawyer and entered into a contract setting forth the intentions and responsibilities of the parties. Who was to do what for what consideration? What was to happen with regard to the acres not needed for lake front lots? How were the proceeds of the sale of lots to be divided? The establishment of a joint tenancy was certainly unwise and dangerous. The death of one joint tenant, of course, vests the entire interest in the remaining joint tenant. There are other answered questions as to the transaction and the business plan of the parties. It is not unfortunately an unfamiliar situation where lay people undertake activities without legal advice, all without foreseeing the trouble to come "down the road." That is exactly what happened here. They have expected lawyers and a court to unravel their casual and reckless doings. The situation is further complicated by the fact that a state court would have no jurisdiction as to Indian trust land. In the present case, there is no diversity of citizenship between plaintiffs and Mr. Renville.

To further complicate the matter, plaintiffs have now moved for leave to serve and file a second amended complaint to add a claim that the court should declare that a constructive trust exists as to 17.5 acres of the total 45.5 acres conveyed by gift deed. Plaintiffs cite no authority for the court to grant this relief and this court knows of no authority for the court to do so. Ordinarily, leave to amend should be freely granted. However, this is a case in which the proposed amendment would be futile. Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003). The motion (Doc. 41) should therefore be denied. This court should not exercise jurisdiction over citizens of South Dakota involving a real estate dispute under the facts of the present case, with no diversity of citizenship.

Plaintiffs have attempted to rely, in part, upon 25 U.S.C. § 345. This is the General Allotments Act. "Section 345 grants federal district courts jurisdiction over two types of cases: (i) proceedings 'involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty,' and (ii) proceedings 'in relation to' the claimed right of a person of Indian descent to land that was once allotted. Section 345 thus contemplates two types of suits involving allotments: suits seeking the issuance of an allotment, see, *e.g. Arenas v. United States*, 322 U.S. 419 (1944), and suits involving "'the interests and rights of the Indian in his allotment or patent after he has acquired it,'" *Scholder v. United States*, 428 F.2d 1123, 1129 (CA9), cert. denied, 400 U.S. 942 (1970), quoting *United States v. Pierce*, 235 F.2d 885, 889 (CA 9 1956)." United States v. Mottaz, 476 U.S. 834, 845 (1986). It is further made clear in Mottaz that the Government's immunity is waived "only with respect to the former class of cases: those seeking an original allotment." *Id.* Mottaz makes it clear, relying upon Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1942), that "to the extent that § 345 involves a waiver of federal immunity, as opposed to a grant of subject-matter jurisdiction to the district courts, that section 'authorizes, and provides governmental consent for, only actions *for* allotments.'" It is obvious that the

United States has not waived sovereign immunity as to this action seeking relief, in part, pursuant to Section 345. Thus, plaintiffs may not proceed under Section 345 against the United States.

Plaintiffs have also attempted to rely, in part, upon 28 U.S.C. § 1353. This statute has no application to this case. Plaintiffs are not seeking an "allotment of land under any Act of Congress or treaty." There is also not a federal question presented under 28 U.S.C. § 1331.

This action necessarily "boils down" to an appeal from action taken by the Board. This court is not acting as a trial court as to the issues. The action by the Board is subject to judicial review pursuant to 5 U.S.C. § 704. For the court to set aside the agency action, a showing must be made that the agency ruling was "arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with the law." This is in accordance with 5 U.S.C. §706(2)(A). See South Dakota v. U.S. Dept. of Interior, 487 F.3d 548, 551 (8th Cir. 2007). I am unable to find that the agency action was arbitrary or capricious. I am unable to find that the agency action was an abuse of discretion or otherwise inconsistent with the law. It was actually a carefully tailored and very limited ruling. The question is not whether this court would have made a similar ruling. The jurisdiction of this court is limited as explained above. The agency has never passed upon any question of breach of trust responsibilities. In that sense, there is also a failure to exhaust administrative remedies. This court has no jurisdiction to pass on breach of trust claims against the United States, assuming such claims have been advanced.

This court earlier ordered the parties to engage in a mediation session with United States Magistrate Judge John Simko. They did so and the court is now advised that the plaintiffs have reached a settlement with Mr. Renville, thus disposing of any claims between or among them. The plaintiffs did not reach any settlement which would dispose of the appeal of the board decision.

The relief sought by plaintiffs should be denied and this action should be dismissed with prejudice. This dismissal includes any request for the court to entertain supplemental jurisdiction as to the claims of plaintiffs against Mr. Renville personally. There is nothing to supplement. The contentions of the plaintiffs and Mr. Renville have been addressed by a settlement and all claims are therefor moot.

IT IS ORDERED, as follows:

(1) The motion to serve and file a second amended complaint (Doc. 41) is denied.

(2) The agency action was not arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with the law.

(3) This agency action is affirmed and approved.

(4) All other claims for relief are denied and this action is dismissed with prejudice.

(5) No costs will be taxed.

Dated this 29th day of March, 2010.

BY THE COURT:

CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: _____
            DEPUTY
(SEAL)