UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

NORTHERN DIVISION



**FILED**
JUN 0 1 2011

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|   |   |
|---|---|
| MAYNARD AND FLORINE BERNARD, | CIV 08-1019 |
| Plaintiffs, | |
| -vs- | ORDER |
| | AND OPINION |
| UNITED STATES DEPARTMENT OF THE INTERIOR, SECRETARY OF THE DEPARTMENT OF INTERIOR, BOARD OF INDIAN HEARINGS AND APPEALS, GREAT PLAINS REGIONAL DIRECTOR, BUREAU OF INDIAN AFFAIRS, and GRADY RENVILLE, | |
| Defendants. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This action, in the final analysis, has been an appeal from final agency action taken by the Board of Indian Appeals ("Board" or "IBIA"), the Board being authorized to deal with such matters by the Secretary of the Interior. The Board affirmed on October 16, 2007, a decision made by the Great Plains Area Regional Director of the Bureau of Indian Affairs ("BIA") on February 3, 2005.

The Board found no authority under the contentions of the plaintiffs for the agency to declare a gift deed from plaintiffs to Grady W. Renville null and void. The gift deed from the present plaintiffs placed the described land in joint tenancy with right of survivorship, the owners (after the transfer) being Maynard Bernard (one of the present plaintiffs) and defendant Renville. An application to make the transfer had been submitted to the agency by Maynard Bernard. The application stated: "I wish to Gift Convey my land to Maynard Bernard + Grady W. Renville Joint Tenancy with the right of

survivorship." The stated reason on the application was a joint business venture. The word "yes" is circled next to the statement: "I wish to waive the appraised value." The gift deed application was never approved by the BIA although the BIA agency superintendent approved the deed itself on May 21, 2004, after the deed had been executed by both plaintiffs in the presence of a notary public. The deed was recorded on June 3, 2004, in the appropriate BIA office.

Plaintiffs took no action to disclaim or challenge the deed between the date of its execution on April 20, 2004, and the date of approval by the agency superintendent on May 21, 2004. Plaintiffs claim they did not realize that a gift had been conveyed to Mr. Renville until they received a copy of the deed from the BIA in mid-June of 2004. This is, at best, a strange contention since the form signed by Mr. Bernard stated that he wished to "Gift Convey my land . . ." By mid-June of 2004, Mr. Renville had commenced development of the land as lake lots, spending, according to him, more than $188,000.00 in connection therewith. Despite the finding of the Board to the contrary, plaintiffs have disputed that Mr. Renville spent this much money to start the development. They have not specified what was spent. The Board also noted in its decision that there was no evidence in the record of misconduct by Renville to "induce" the gift deed. 46 IBIA 37, FN 11.

On July 21, 2004, plaintiffs, through a lawyer (not the present attorney for the plaintiffs), wrote to the local BIA Superintendent, asking that the deed be declared "null and void." There was no mention of offering any fair treatment for Mr. Renville. There was no mention of a rescission. The superintendent and later the BIA Regional Director refused to "void" the deed, finding that there was no authority for the agency to so act. Nothing was ever presented to the agency by plaintiffs to show what authority there was for the agency to act to void a deed. The next step was the appeal to the IBIA and then to this court.

The original claim was in essence that the BIA breached its fiduciary obligation to the plaintiffs. One of the significant problems for plaintiffs in the present action was that the IBIA never decided whether there was any possible breach of a fiduciary obligation. A failure by an agency to act almost always results in a remand to the agency to permit it to act before the matter proceeds in federal court. A remand in this case, however, would have accomplished nothing but further delay as the IBIA would no doubt have come to the same conclusion that the agency had no authority to void the deed in question. All individual parties are certainly close to being described as "elderly" and a death by one of the joint tenants would result in a legal "mess" since the surviving joint tenant would own all the land in question and further litigation would be required.

The claim could have been deciphered as alleging the practice of law by a non-lawyer employed by the BIA. However, the employee did exactly what plaintiffs requested and there is no evidence of the employee holding herself out as a lawyer or even a real estate agent. It is obvious that the employee in question did not understand the differences between joint tenancy and tenancy in common. She had the mistaken and confused idea that there are two types of joint tenancy, one with the right of survivorship and one without such rights. She allowed the parties to rely on an oral agreement that very likely could never be enforced. Any lawyer would or should have been familiar with what is called the "statute of frauds." SDCL 53-8-2 is that statute in South Dakota. The statute defines contracts that are required to be in writing to have any validity. "The following contracts are not enforceable by action unless the contract or some memorandum thereof is in writing and subscribed by the party to be charged or his agent, as authorized in writing: (1) An agreement that by its terms is not to be performed within a year from the making thereof; . . . (3) An agreement for sale of real estate or an interest therein, or lease of the same, for a period longer than one year. However, this does not abridge the power of any court to compel specific performance of any agreement for sale of real estate in case of part performance thereof; . . ." There was no compliance with

subsection one of the statute. Clearly, the agreement was not to be performed within a year from the claimed oral making of the agreement. Clearly, the claimed agreement to reconvey a portion of the real estate was never reduced to writing or signed by anyone. The BIA employee was completely "over her head" in trying to assist the parties. She might as well have offered to perform orthopedic surgery. She should have referred the parties to lawyers. At a minimum, she should have consulted an attorney with the BIA. She did neither. Again, however, she was not claiming to be a lawyer and there is nothing to indicate that she proceeded other than in a fashion to attempt to assist the parties to do what they wanted to do. Whether any of these activities by the employee amount to a breach of trust is not for this court to say, especially in the first instance.

It is elementary, of course, that, if a lawyer had been consulted, many questions would have been posed and warnings given. No competent lawyer, assuming that advice would be heeded, would have permitted the parties to proceed as they did. As explained above, there was no such consultation with a lawyer until after the deed had already been executed and recorded. Even then, nothing but an inequitable remedy was sought. The original complaint sought money damages but, under the first amended complaint, there was no claim for monetary damages under either the Tucker Act (which claims would lie in the Court of Federal Claims and not in the District Court) or the Little Tucker Act or the Indian Tucker Act. Nor has there ever been a claim presented under the Federal Tort Claims Act. The motion of the government (Doc. 7) to dismiss this action became moot and was earlier denied by the court after plaintiffs amended their complaint. Had the complaint not been amended, the court would have had no choice but to dismiss any claims for money damages against the United States.

The IBIA found it significant that plaintiffs did not argue that the deed was voidable; nor did they seek rescission. The court agreed with these concerns. Rescission is not an uncommonly used remedy under South Dakota law. There are numerous South Dakota Supreme Court decisions explaining the remedy and proper procedures to be

followed. In addition, there is a rather extensive statutory scheme under South Dakota law, detailing what must be done to seek and to justify rescission. Rescission is not available in the absence of the party (seeking to rescind) offering to restore the opposing party to an equitable position. A "tender back" of all consideration received is one of the conditions precedent to a successful rescission.

The party seeking to rescind must normally act promptly and not take advantage of the other contracting party. The record has been devoid of any offers by plaintiffs to compensate Mr. Renville for any of his development expenses. Plaintiffs initially and for a long period of time simply sought the return of all the land, thus attempting to take advantage of what was spent by Mr. Renville. No court of equity would ever permit such conduct seeking a windfall. It is not at all surprising that the IBIA refused to grant what plaintiffs sought. "Inasmuch as Appellants have not sought rescission of the gift deed as a remedy for their claims, but limit their request for relief to a declaration that the deed is 'null and void', we affirm the Regional Director's decision without reaching the merits of Appellants' breach of trust claims." 46 IBIA 36-37. The IBIA further noted that it was ". . . undisputed that Renville has altered his position in reliance upon the conveyance--by expending more than $188,000 in developing the property--and is not a party to the allegations of breach made against BIA . . ." The IBIA was not aware of any relief which it had the authority to order. 46 IBIA 37. The IBIA affirmed the BIA action " . . . without reviewing the merits of Appellants' breach of trust claims. In so concluding, we express no opinion on the merits of these claims." 46 IBIA 38. The IBIA did conclude that it was immaterial that the gift deed application itself was never "approved" by the BIA. It was sufficient if the transaction itself was approved, as it was. They also found that no appraisal was required under the circumstances. The present plaintiffs waived any right to require an appraisal.

Mr. Bernard and Mr. Renville are apparently second cousins. They apparently saw an opportunity to develop and sell to "outsiders" very valuable land at Pickerel Lake in

Day County, South Dakota. We know, of course, that the parties should have each consulted a lawyer and entered into a contract setting forth the intentions and responsibilities of the parties. Who was to do what for what consideration? What was to happen with regard to the acres not needed for lake front lots? How were the proceeds of the sale of lots to be divided? The establishment of a joint tenancy was certainly unwise and dangerous. The death of one joint tenant, of course, vests all rights and title to the land in the remaining joint tenant. There were other answered questions as to the transaction and the business plan of the parties. It is not unfortunately an unfamiliar situation where lay people undertake activities without legal advice, all without foreseeing the trouble to come "down the road." That is exactly what happened here. They have expected lawyers and a court to unravel their casual and extremely reckless doings, especially taking into account the very valuable land involved here. The situation is further complicated by the fact that a state court would have no jurisdiction as to Indian trust land. In the present case, there is no diversity of citizenship between plaintiffs and Mr. Renville.

To further complicate the matter, plaintiffs moved for leave to serve and file a second amended complaint to add a claim that the court should declare that a constructive trust existed as to 17.5 acres of the total 45.5 acres conveyed by gift deed. Plaintiffs cited no authority for the court to grant this relief and this court knew of no authority for the court to do so. Ordinarily, leave to amend would be freely granted. However, this is a case in which the proposed amendment would have been futile. Hammer v. City of Osage Beach, 318 F.3d 832, 844 (8th Cir. 2003). The motion (Doc. 41) was therefore denied. This court should not exercise jurisdiction over citizens of South Dakota involving a real estate dispute under the facts of the present case, with no diversity of citizenship.

Plaintiffs attempted to rely, in part, upon 25 U.S.C. § 345. This is the General Allotments Act. "Section 345 grants federal district courts jurisdiction over two types of

6

cases: (i) proceedings 'involving the right of any person, in whole or in part of Indian blood or descent, to any allotment of land under any law or treaty,' and (ii) proceedings 'in relation to' the claimed right of a person of Indian descent to land that was once allotted. Section 345 thus contemplates two types of suits involving allotments: suits seeking the issuance of an allotment, see, *e.g. Arenas v. United States*, 322 U.S. 419 (1944), and suits involving "'the interests and rights of the Indian in his allotment or patent after he has acquired it,'" *Scholder v. United States*, 428 F.2d 1123, 1129 (CA9), cert. denied, 400 U.S. 942 (1970), quoting *United States v. Pierce*, 235 F.2d 885, 889 (CA 9 1956)." United States v. Mottaz, 476 U.S. 834, 845 (1986). It is further made clear in Mottaz that the Government's immunity is waived "only with respect to the former class of cases: those seeking an original allotment." *Id.* Mottaz makes it clear, relying upon Affiliated Ute Citizens v. United States, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1942), that "to the extent that § 345 involves a waiver of federal immunity, as opposed to a grant of subject-matter jurisdiction to the district courts, that section 'authorizes, and provides governmental consent for, only actions *for* allotments.'" It is obvious that the United States has not waived sovereign immunity as to this action seeking relief, in part, pursuant to Section 345. Thus, plaintiffs were not allowed to proceed under Section 345 against the United States.

Plaintiffs also attempted to rely, in part, upon 28 U.S.C. § 1353. This statute has no application to this case and the court has so ruled. Plaintiffs were not seeking an "allotment of land under any Act of Congress or treaty." There also was no federal question presented under 28 U.S.C. § 1331.

This action necessarily "boiled down" to an appeal from action taken by the IBIA. This court refused to act as a trial court as to the issues. The action by the IBIA was subject to judicial review pursuant to 5 U.S.C. § 704. For the court to set aside the agency action, a showing had to have been made that the agency ruling was "arbitrary, capricious, an abuse of discretion, or otherwise inconsistent with the law." This is in

7

accordance with 5 U.S.C. §706(2)(A). *See* South Dakota v. U.S. Dept. of Interior, 487 F.3d 548, 551 (8th Cir. 2007). I was unable to find that the agency action was arbitrary or capricious. I was unable to find that the agency action was an abuse of discretion or otherwise inconsistent with the law. It was actually a carefully tailored and very limited ruling by the IBIA. The question was not whether this court would have made a similar ruling. The jurisdiction of this court is limited as explained above. The IBIA never passed upon any question of breach of trust responsibilities. In that sense, there was also a failure to exhaust administrative remedies. This court had and has no jurisdiction to pass on breach of trust claims against the United States, assuming such claims have been advanced.

I fully intended to simply dismiss the appeal from the federal agency. However, before doing so, I earlier ordered the parties to engage in a mediation session with United States Magistrate Judge John Simko. They did so and the court is now advised that the plaintiffs have reached a settlement with Mr. Renville, thus disposing of any claims between or among them. The plaintiffs did not reach any settlement which would dispose of the appeal of the board decision.

The relief sought by plaintiffs was denied and this action was dismissed with prejudice. I mistakenly dated the opinion and order (Doc. 54) in 2010. It was entered in 2011. I also erred in my order for the parties to engage in a mediation session. That order also should have been dated in 2011, not 2010. The dismissal included any request for the court to entertain supplemental jurisdiction as to the claims of plaintiffs against Mr. Renville personally. There was nothing to supplement. The contentions of the plaintiffs and Mr. Renville have been addressed by a settlement and all claims between or among them are therefor moot.

Plaintiffs have now asked the court to transfer what are new and different claims to the United States Court of Federal ("CFC") claims pursuant to 28 U.S.C. § 1631. This statute provides: "Whenever a civil action is filed in a court . . . , including a petition for

review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."

The plaintiffs earlier abandoned and disclaimed any Tucker Act claims (including the Indian Tucker Act) before this court. They did this by virtue of seeking to amend their complaint in 2009 to avoid a dismissal of the action for lack of jurisdiction as to the Tucker Act. The court granted the motion to amend.

When I dismissed this action, there were no claims pending for money damages or for claimed breach of trust. I ruled on solely what was pending and presented to the court, namely an appeal from a federal agency. I clearly had jurisdiction to rule on such an appeal. The CFC would have had no jurisdiction to consider an appeal from the IBIA. I believe I would be in error to order any transfer, despite the fact that I understand that plaintiffs have perhaps not received total justice nor have they been made whole. Transferring the new claims would probably be in the "interest of justice" but the other requirements of the statute are clearly not met. I am being asked to transfer claims that are not pending in the district court. In addition, it does appear that the statute of limitations may well have expired, there having been no filing with the CFC within six years after the claim first accrued. *See* 28 U.S.C. § 2501.

There is somewhat of a "Catch 22" situation here. If the action is pending in the district court, there is nothing to transfer because the court does not lack jurisdiction as to the appeal and the CFC would have no jurisdiction as to the appeal from the federal agency. If the action is no longer pending in the district court, there is nothing to transfer.

On April 26, 2011, the United States Supreme Court decided <u>United States v. Tohono O'odham Nation</u>, 131 S.Ct. 1723. The case interprets 28 U.S.C. § 1500, adding to what was said in <u>Keene Corp. v. United States</u>, 508 U.S. 200, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993). Section 1500 reads: "The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States." We are told that the use of the phrase "'in respect to a cause of action' must refer to operative facts and not whatever remedies an aggrieved party might later request." 131 S.Ct. at 1728. As the opinion notes, the CFC is the only judicial forum for most non-tort requests for significant monetary relief against the federal government. Further, we are reminded that CFC has no general power, unlike district courts, to provide equitable relief against the federal government or its officers. We are told that the statute's purpose "is clear from its origins with the cotton claimants-the need to save the Government from burdens of redundant litigation-and that purpose is no less significant today. The conclusion that two suits are for or in respect to the same claim when they are based on substantially the same operative facts allows the statute to achieve its aim." <u>Id</u>. at 1730. "Two suits are for or in respect to the same claim, precluding jurisdiction in the CFC; if they are based on substantially the same operative facts, regardless of the relief sought in each suit." <u>Id</u>. at 1731. The Tohono O'odham Nation , like the Bernards, "could have filed in the CFC alone and if successful obtained monetary relief to compensate for any losses caused by the Government's breach of duty." <u>Id</u>. at 1730. There would be substantial overlap in operative facts between the District Court case and any CFC suit, precluding jurisdiction in the CFC. The Supreme Court concluded: "Should the Nation choose to dismiss the latter action, or upon that action's completion, the Nation is free to file suit again in the CFC if the statute of

10

limitations is no bar." *Id.* at 1731. I realize this offers no comfort to the plaintiffs but the statement comports with the recognition earlier in the opinion that even if hardship results to the Nation, "considerations of policy divorced from the statute's text and purpose cannot override its meaning." *Id.* at 1731.

It could be argued that the present motion is not governed by <u>Tohono O'odham Nation</u> since the procedural facts are somewhat different. I conclude that this court is bound by the rationale of <u>Tohono O'odham Nation</u>. The rationale provides additional reasons why the motion to transfer should be denied.

The United States has filed a motion (Doc. 56) to strike the exhibits or attachments to the motion filed by plaintiffs. The United States sets forth that the local rules prohibit the filing of discovery material. That is true. However, the filings should be allowed in this case. Plaintiffs are entitled to make the best record they can in the event they wish to appeal. The motion of the United States should be denied.

Now, therefore, IT IS ORDERED, as follows:

(1) The motion to transfer (Doc. 55) by altering or amending the judgment should be and is denied.

(2) The motion (Doc. 56) to strike Documents 55-2 through 55-9 (exhibits 2-9 attached to plaintiffs; motion should be and is denied.

Dated this 1st day of June, 2011.

BY THE COURT:

Charles B. Kornmann
------
CHARLES B. KORNMANN
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: _____
DEPUTY
(SEAL)